## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**JEFF PARKER**                                                                                           **PLAINTIFF**

v.                                                                                                        No. 5:21-CV-44-BJB

**CINCINNATI INSURANCE CO.**                                                                              **DEFENDANT**

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Jeff Parker bought a business-and-property policy from Cincinnati Insurance Company for his Paducah catering company in early 2020, before the Covid-19 pandemic. *See* Complaint (DN 1-2) ¶¶ 1–3. Then, in response to the pandemic, the Governor of Kentucky issued a statewide shutdown order closing retail businesses. Shutdown Order (DN 11-2) at 2. Parker alleges that the order caused his company to lose money. *See* Complaint ¶ 6. He filed an insurance claim for this lost income and extra expense, but Cincinnati Insurance denied coverage. ¶ 5. Parker then sued Cincinnati Insurance for breach of contract and statutory and common-law bad faith. ¶¶ 6–7.

Parker's breach-of-contract claim turns on two relevant policy provisions: the "Business Income and Extra Expense" section, and the "Civil Authority" subsection within it. *See* Policy (DN 5-2) at 18–19.

The Business Income provision covers actual loss of business income and rental value from suspension of operations during a "period of restoration," but requires a "direct loss" to property:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

*Id.* at 18 (internal quotation marks omitted). "Loss," as used here, "means accidental physical loss or accidental physical damage." *Id.* at 38 (internal quotation marks omitted).

The policy's "Civil Authority" provision specifically addresses losses "caused by action of civil authority":

1

> When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
>
> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 18–19.

Cincinnati Insurance moved to dismiss this lawsuit on the ground that Parker did not or could not allege direct physical loss or damage to the insured premises. This failure, it contends, is dispositive for Parker's breach and bad-faith claims because each requires direct physical loss or damage. Motion to Dismiss (DN 5-1) at 1–2. Additionally, according to Cincinnati Insurance, Parker failed to allege other policy requirements: direct physical loss or damage to other property at the insured property's premises, a civil-authority action forbidding access to its premises or "to the area immediately surrounding the damaged property[,]" or civil-authority action "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss." *See id.* at 21–22; Policy at 19 (Civil Authority subsection).

Parker argues that "damage" and "physical loss," both undefined terms, are ambiguous and should be construed against the drafter—Cincinnati Insurance. *See* Response (DN 11) at 2, 5–6. Because the Sixth Circuit, applying Kentucky law, held that Covid-19 does not constitute "physical loss or damage" to property, and because no evidence suggests that the Supreme Court of Kentucky would disagree, this Court grants the motion to dismiss.

## I. Breach of Contract

Parker contends that Cincinnati Insurance breached the Business Income provision of his policy by not covering his lost income and extra expenses. Complaint ¶ 5. This provision, however, covers only situations involving "physical loss or … damage." *See* Policy at 18–19, 38 (internal quotation marks omitted).

The Sixth Circuit has recently interpreted the phrase "physical loss or damage" not to include the presence or effects of the coronavirus that causes Covid-19. Applying Kentucky law, the Court of Appeals affirmed Cincinnati Insurance's denial of coverage under a policy that it issued and that resembles the one at issue here. *Estes v. Cincinnati Insurance Company* held that the plain meaning of "physical loss or damage" requires an actual, tangible deprivation or destruction of property. 23 F.4th 695, 700–02 (6th Cir. 2022) (affirming dismissal of business-income claims for failure to allege accidental direct physical loss or damage to property). The term "physical loss," according to *Estes*, conveys to the "average person" that a person who owns property has been "tangibly deprived" of their property or that their property has been "tangibly destroyed." *Id.* at 700 (internal quotation marks omitted). Moreover, the Court of Appeals was "convinced" that "the Kentucky Supreme Court would agree with Cincinnati Insurance." *Id.* at 699.

The same reasoning applies here. Parker has failed to point to an actual, tangible change or impact to property that could amount to a physical loss under his policy. In addition to the on-point, in-circuit precedent just discussed, this Court has reached the same conclusion regarding lost business income attributed to Covid. *See, e.g., Schroeder Publ'g v. Great N. Ins.*, No. 5:20-cv-108, 2022 WL 68959, at *2–3 (W.D. Ky. Jan. 6, 2022); *Bluegrass Oral Health Center v. Cincinnati Ins. Co.*, No. 1:20-cv-120, 2021 WL 1069038, at *2–3 (W.D. Ky. Mar. 18, 2021) (collecting similar cases). And these decisions are consistent with other district courts as well. *E.g., Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.*, 440 F. Supp. 3d 520, 529–31 (D.S.C. 2020) (only actual damage to property, not mere loss of use, triggers civil authority coverage). Even before the pandemic, other courts interpreted similar provisions in similar contexts to reach the same conclusion. *See, e.g., United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131–33 (2d Cir. 2006).

A widely-criticized and oft-rejected outlier case (also involving Cincinnati Insurance) forms the basis of Parker's opposition (at 4–5). That ruling is no more availing here. *Studio 417, Inc. v. The Cincinnati Insurance Company* held that direct physical loss may cover loss of use, including from a Covid-19 shutdown order. 478 F. Supp.3d 794, 800–01 (W.D. Mo. Aug. 12, 2020). Since then, courts have uniformly rejected *Studio 417*'s reasoning. *See, e.g., Bluegrass Oral Health Center*, 2021 WL 1069038 at *4 (interpreting identical policy language); *Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*, 538 F. Supp. 3d 926, 932–33 (E.D. Mo. 2021); *Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*, 530 F. Supp. 3d 74, 79 n.7 (D. Mass. 2021) ("[C]ourts have either tiptoed around the holding in [*Studio 417*], criticized it, or treated it as the minority position.") (collecting cases). *Studio 417* used a secondary definition of loss to cover loss of use—an interpretation that is inconsistent with the reading set forth in *Estes. See also Bluegrass Oral Health Ctr.*, 2021 WL 1069038, at *4. Similarly, Parker's complaint doesn't allege a tangible deprivation nor destruction of property. Just like *Estes*, here the "direct physical loss or damage to property" is a coverage requirement that Parker's pleadings do not satisfy. This dooms Parker's first two theories.

To the extent Parker relies on the text of the Civil Authority subsection, that contention fails for similar reasons.[1] This subsection applies "[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises.'" Policy at 19. But the coronavirus didn't cause any "damage" as interpreted by the Sixth Circuit, leaving Parker with nothing but "intangible or economic harms" that fall outside the policy's coverage. *Estes*, 23 F.4th at 700.[2] Nor do Parker's allegations satisfy two other conditions of this provision, both of which rely on the same concept of damage: a "civil authority" did not "prohibit[]" "access to the area immediately surrounding the damaged property … as a result of the *damage*." Policy at 19. (emphasis added). Nor did the civil authority act "in response to dangerous physical conditions resulting from the *damage* or continuation of The Covered Cause of Loss." *Id.* Similar to the plaintiff in *Bluegrass Oral Health*, Parker didn't allege any damage to property other than the insured property or damages to the premises that caused Kentucky to prohibit access to the property.

Finally, Parker argues that his company had a "reasonable expect[ation]" of coverage under the Covid-19 shutdown order and, as a result, is entitled to "all the coverage" within its reasonable expectation. Response at 6–7 (quoting *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986)). Only if necessary to resolve a textual ambiguity, however, do courts consider "the insured's reasonable expectation." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003); *accord Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 350 (Ky. 2021); *Burlington Ins. Co. v. Greenwood Rollerdome, Inc.*, 420 F. Supp. 3d 632, 645 (W.D. Ky. 2019) (triggering the reasonable-expectations doctrine requires an actual ambiguity in policy language).[3] Because the policy language at issue is unambiguous, particularly in light of controlling and recent Sixth Circuit authority, the reasonable-expectation doctrine doesn't apply. *See, e.g.*, *Estes*, 23 F.4th at 699–700; *Santo's Italian Café LLC v. Acuity Ins.*, 15 F.4th 398, 405 (6th Cir. 2021); *Wild Eggs Holdings v. State Auto Prop. & Cas. Ins.*, No. 3:20-

---

[1] Neither the Complaint nor the Response expressly invoke Civil Authority coverage, but they do discuss the shutdown order "by the Commonwealth of Kentucky[.]" Complaint ¶ 5.

[2] Separately, Parker alleges that the complaint should survive dismissal because discovery has not yet taken place. Response at 6–7. Parker misunderstands the federal pleading standard: he must plead a plausible claim in order to get discovery, rather than using discovery to shore up an implausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). His alternative request to amend the complaint (Response at 7 n.2) is not properly before the Court in the form of a motion, and would fail in any event because the brief doesn't show any way in which an amended complaint could avoid dismissal under *Estes* and related caselaw.

[3] Parker's allusion to a *contra preferendum* argument—construing ambiguous terms against their drafter—fails for the same reason. Response at 5–6. The relevant terms are not ambiguous.

cv-501, 2021 WL 4234940, at *6–8 (W.D. Ky. Sept. 16, 2021) (collecting cases reading similar policy language as unambiguous).[4]

## II. Bad Faith

Parker also alleges that when Cincinnati Insurance denied his claim, it acted in bad faith, as interpreted by Kentucky common law and defined in the Kentucky Claims Settlement Practices Act. Complaint ¶ 7; *see* Unfair Claims Settlement Practices Act, 2008 Ky. Acts, ch. 169 § 7 (codified at Ky. Rev. Stat. Ann. § 304.12-230). Like Parker's breach-of-contract claim, the bad-faith claims fail because his property suffered no physical loss.

Kentucky law uses the same three-party test for both common-law and statutory bad-faith claims. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). First, the policy's terms must oblige the insurer to pay the claim. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Second, the insurer must lack any reasonable basis in law or fact to deny the claim. *Id.* Third, the insurer must know (or recklessly disregard) that it has "no reasonable basis" for denying the claim. *Id.*

Parker's claim fails to satisfy even the first element. Based on the language of the contract as interpreted above, he cannot establish that Cincinnati Insurance is obliged to pay his claim without first establishing actual, direct, tangible physical damage to the property. And without a contractual obligation, Parker's bad faith claim cannot pass muster. *See Kentucky Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. Ct. App. 2004). His arguments would fail to satisfy the second or third elements for the same reason: prevailing law requiring actual, direct, tangible physical damage to property provides the insurer with a reasonable basis for denial of his claim.

## ORDER

This Court grants Cincinnati Insurance's motion to dismiss (DN 5).

Benjamin Beaton, District Judge
United States District Court

March 2, 2022

---

[4] Nor may Parker effectively amend his Complaint, as implied at Response 6–7, by adding the reasonable-expectation allegation into his response brief. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Brown v. Accenture Fed. Servs.*, 2016 WL 3298543 at *5 n.5 (E.D. Ky. June 13, 2016) ("A complaint's insufficiency 'may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *United States v. Medquest Assocs., Inc.*, 702 F. Supp. 2d 909, 918 n. 2 (M.D. Tenn. 2010)).